FILED
01 MAY 23 PM 3:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ENTERED
MAY 23 2001

| | |
|---|---|
| NOBLE & PITTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 98-G-3137-S |
| HIGHWAYMASTER | ) |
| CORPORATION; MARK SPICER, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION

HighwayMaster, now known as @Track Communications, Inc. [hereinafter HighwayMaster] is a trucking company that supplies satellite location detecting and monitoring equipment for over-the-road trucks. Around 1995 or 1996 Mr. Charles Pitts [hereinafter Pitts], president of Noble & Pitts contacted HighwayMaster in order to purchase satellite location equipment and a service contract for said equipment from HighwayMaster. Mr. Pitts's dealings were with Mark Spicer, an employee of HighwayMaster. Following negotiations the parties entered into a contract on July 3, 1997, for the sale of said mobile tracking



equipment. Authorized agent James Dawson executed the contracts binding Noble & Pitts. The action presently before the court is one for fraud in the inducement and promissory fraud brought by Noble & Pitts, plaintiff contending that if proposed regulations requiring trucking companies to have unlimited access to information obtained or gathered from mobile tracking units were enacted by the Highway Department the contract would be voided. Pursuant to that alleged belief Noble & Pitts returned some tracking units and repudiated the contract.

Defendant HighwayMaster has filed a counterclaim for the amount of the repudiated contract.

Pitts admits that his company breached the contract because it believed the regulations had become law. He also admits that had the regulations not been enacted he would have gone through with the contract. He knows of no other evidence that HighwayMaster intended to deceive him. He wanted the equipment if the regulations were not put into force. The above statements were part of his sworn deposition testimony.

Mr. Pitts later tried to sidestep his deposition testimony by an affidavit. Blaming his misuse of words on no "legal training," he maintained he

had used the terms "regulation" and "issuance" interchangeably in his deposition. In his affidavit he swore the following:

> I specifically stated in my deposition that Mark Spicer and I "had an agreement that if the DOT came forth prior to installation of these units with an issuance that they would have the right to go in and gather this information, whether HighwayMaster kept that information or by Court Order that they could hold that information or require us by subpoena to gather that information, that I would not take the units". [sic]

In October 1997 Noble & Pitts came to the conclusion that the regulations had become law, contending that regulations were enacted August 15, 1997. Based upon that belief the company contacted Mark Spicer and told him they did not want the uninstalled units. Those units were returned. Noble & Pitts demanded return of its $7,000.00 deposit. Plaintiff contends it does not owe the money because of a misrepresentation regarding the enactment of regulations. Plaintiff makes no complaint that the equipment was misrepresented.

In support of its position plaintiff has submitted an August 15, 1997, memorandum FP-FCR-97-35 from the Associate Administrator for Motor Carriers to Regional Directors, Office of Motor Carriers on the "Policy on the Use of Advanced Information Technology" which it contends is the enacted regulation. The memorandum, signed by George L. Reagle, discusses incentives for safety

applications. In spite of its contention that this memorandum relieved it from its obligations under the contract plaintiff does not submit anything proving the regulations were enacted or that this particular memorandum became law.

Defendants have submitted the declaration of Anthony J. McMahon,[1] which the court has allowed. Mr. McMahon, an attorney practicing law in Pennsylvania, is also admitted to practice in Maryland and the District of Columbia. From July 1985 to April 1989 he was Chief Counsel for the Federal Highway Administration. At the time of his January 24, 2001, declaration he was immediate past chairman of the Transportation Law Section of the Federal Bar Association. He served as Chairman of the Transportation Law Committee of the Transportation Research Board, a unit of the National Academy of Sciences five years. Mr. McMahon opines that no such regulations as referred to in the memorandum were adopted. He concluded that "[n]o obligation exists for trucking companies to provide government access to information obtained,

---

[1] See the memorandum opinion and order entered April 3, 2001, documents 38 and 39 of the court file, by which the court ruled that his credentials qualify him to render an opinion on the case at bar. "Rendering an opinion in the arcane subject of transportation law is analogous with the permissible practice of accepting expert opinion in admiralty cases or those involving patent law-- exceptions which allow an expert to tell the court the law."

gathered, or generated by mobile tracking equipment." Mr. McMahon went on to state the following:

> The memorandum is not a regulation. It is a statement of policy for internal guidance of persons in the Office of Motor Carriers who had responsibility for enforcement of the Federal Motor Carrier Safety Regulations (FMCSR). Since January 1, 2000 the Federal Motor Carrier Safety Administration (FMCSA) has had responsibility for administration of those regulations.
>
> The memorandum was never promulgated for the purpose of informing the public, particularly motor carriers subject to the FMCSR, of any duty or obligation. It does not purport to create a duty or obligation. The memorandum came to the public attention after it was faxed to me. As shown on the top of the exhibit, it was faxed on September 10, 1997 from the Chief Counsel. On that date I had a conversation with the Acting Chief Counsel of FHWA, Edward Kussy, Esq. about the use of data produced by electric tracking and communication systems (ETCS) to verify the accuracy of truck drivers' records of duty status, or "logs." Mr. Kussy told me of the existence of the memorandum, and faxed it to me. I saw that it was disseminated widely by sending it to trucking companies, the Truckload Carriers Association and Qualcomm and HighwayMaster, the principal providers of ETCS.
> ...
> At this time there is no regulation or law that requires motor carriers to retain, or produce for investigators, data generated by ETCS used by the carriers. I am interested because I am President of the Safety Research Center, (SRC) a nonprofit corporation that advocates an alternative to the current federal regulations regarding drivers hours of service.
> ...
> FHWA and FMCSA, like any federal agency, can establish a regulation only by following the formal notice and comment

5

rulemaking process required by the Administrative Procedure Act, 5U.S.C. § 552 *et seq.* The memorandum does not qualify.

A third declaration in the record, that of Neil Read, deals with the counterclaim filed by defendant HighwayMaster. Mr. Read is Director of Revenue Assurance and Treasury for HighwayMaster. He concludes that HighwayMaster would have realized a profit of $800.32 on each unit, with a total profit from the sale of 100 units being $80,032.00. An activation fee of $50.00 per unit would have been charged ($50.00 x 100 =$5,000.000). Interest under the contract at 1.5% x 26 x $80,032.00 = $31, 212.48. HighwayMaster, therefore asks for a judgment of $116,244.48 ($80,032.00 + $5,000.00 + $31, 212.48 = $116,244.48), with costs taxed to Noble & Pitts. Plaintiff does not dispute the amount due. Its only defense is that the contact would have been null and void if the regulations were enacted.

The complaint alleges fraud and misrepresentation. Although no claim for promissory fraud (fraud regarding a future act) is made, the complaint is about the failure to perform a future act. Alabama requires the following elements to establish a claim for promissory fraud, as set forth in *Triple J Cattle, Inc. v. Chambers,* 621 So. 2d 1221, 1224 (Ala. 1993) (citing in part *Padgett v. Hughes,* 535 So. 2d 140, 142 (Ala. 1988):

A claim of promissory fraud requires proof of six elements: (1) a false representation, (2) of a material fact, (3) that is justifiably relied upon by the plaintiff, (4) that causes damage to the plaintiff as a proximate result of the reliance, (5) "proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised," and (6) "proof that the defendant had an intent to deceive."

From the facts before the court there is nothing indicating a false misrepresentation was made. Even were one made there is no proof that Mark Spicer or HighwayMaster had the present intention not to perform the fact promised at the time of the promise.

The Alabama Code section pertaining to fraud reads as follows:

Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.

**Ala. Code § 6-5-101. Fraud - Misrepresentations of material facts.**

Plaintiff's contention that Mark Spicer's agreement (if the Department of Transportation did adopt a policy allowing access to the information stored in the tracking units the contract would be void) is fraud is without merit. There is no evidence of misrepresentation. The regulations have not been enacted.

Mr. Pitts's affidavit does not change the substance of his deposition testimony in which he gave answers to specific, clear questions. He cannot be allowed to create an issue of fact by providing an affidavit that contradicts, without sufficient explanation his prior deposition testimony. *See Tittle v. Alabama Power Company*, 570 S. 2d 601, 604 (Ala. 1990) (Rule of law that prohibits use of affidavit for purpose of contradicting deposition testimony is based on concern that such an affidavit might be a sham.).

In *Robinson v. Hank Roberts, Inc.*, 514 So. 2d 958, 961 (Ala. 1987), the court adopted the language pertinent to conflicting deposition/affidavit testimony found in *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984), set forth below:

> "When a party has given clear answers to unambiguous questions which negate the existenance of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.

The court holds that Mr. Pitts's assertion that he has no legal training does not suffice to allow changes in his deposition testimony. Having risen to the presidency of his company belies that he is a novice in the business world. The

8

court holds that defendant HighwayMaster is due summary judgment as a matter of law.

For the same reasons the court holds that defendant Mark Spicer is due summary judgment as a matter of law.

Since plaintiff has offered no defense to the counterclaim, the court holds that judgment should be entered for HighwayMaster in the amount of $116,244.48, with costs taxed against Noble & Pitts. The regulations were never adopted. The memorandum was nothing more than a policy statement. Noble & Pitts improperly repudiated the contract. There was no reason for plaintiff not to go through with the deal.

Having disposed of the three motions for summary judgment, the court is left with the outstanding motion of defendant HighwayMaster to strike the affidavit of Charles William Pitts and the document purporting to be a United States Department of Transportation Memorandum. For the reasons set forth earlier in this opinion the court holds that the self-serving affidavit of Mr. Pitts be struck. Since the memorandum was never enacted into law, it is nothing more than a memorandum and has no bearing on this action. The court holds that the

August 15, 1997, memorandum be struck. Even were these documents allowed the court has sufficiently discussed why they have no relevance on the case at bar.

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED this 23rd day of May 2001.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.